# Strauss *v.* Meertief.

*Action for Breach of Special Contract of Employment.*

1. *Contract for performance of personal services; damages on breach.*—When a person contracts to perform personal services for another, for a particular term, at stipulated wages, and is discharged, without fault on his part, before the expiration of the term; he may regard the contract as broken, and immediately sue and recover all the damages he may sustain up to the time of the trial; or he may treat the contract as still continuing, and, holding himself in readiness to perform it, may recover the entire wages due on the expiration of the term; and if the wages were to be paid by installments, he may recover each installment as it falls due.

2. *Same; other employment in reduction of damages.*—If the person so discharged has an offer or an opportunity of similar employment by another person during the term, it is his duty to accept it: he can not purposely reject it, and remain unemployed during the term, in order to recover his full wages from his first employer; and the latter may, when sued, show such offer or opportunity and refusal to reduce the amount of damages.

3. *Same; same.*—This principle, however, extends only to the offer or opportunity of the same or similar employment, and in the same place as the first; and when the contract is made by a father for the employment of his minor son, an element of personal trust and confidence enters into it, with which the courts interfere "only with a trembling hand," and which would justify the refusal by him of an offer of similar employment by another person, unless it is shown that no reasonable objection could be made to his capacity, reputation, habits, morals, or mode of conducting business.

4. *Same; burden of proof.*—The onus is on the defendant to prove all the facts necessary to make out this defense, and it is not enough for him to show an offer or opportunity of employment and its refusal by the son; but, if he also shows that the offer was rejected by the father, simply on the ground that

| 64 | 299 |
| 93 | 425 |
| 64 | 299 |
| 99 | 233 |
| 64 | 299 |
| 102 | 231 |
| 64 | 299 |
| 127 | 34 |
| f127 | 258 |
| 128 | 485 |
| 64 | 299 |
| 129 | 882 |
| 64 | 299 |
| 131 | 234 |
| 64 | 299 |
| 138 | 395 |
| 138 | 613 |
| 64 | 299 |
| 143 | 198 |

·[Strauss v. Meertief.]

its acceptance might prejudice his right of recovery against the defendant, the *onus* is on the plaintiff to show that some just objection to the offer existed.

5. *Cross-examination of witness.*—The cross-examination of witnesses is, to a great degree, necessarily within the control and discretion of the primary court; and the appellate court is loth to interfere with the exercise of that discretion, when the purpose is to impeach the witness, or show his bias or motive, unless error is plainly shown.

6. *Discharge by employer; estoppel.*—An adequate cause for the dismissal of the person employed, existing and known to the employer at the time of such dismissal, excuses and justifies the discharge, though it may not have been specially assigned at the time; and if the want of business be assigned as the cause of the dismissal, the employer is not thereby estopped, when sued, from showing misconduct, or other adequate cause, existing and known to him at the time of the discharge, though it would be a circumstance for the consideration of the jury.

7. *Conclusiveness of judgment.*—A judgment rendered in a former action between the same parties, whether offered as a plea in bar, or as evidence, is conclusive, not only of the questions actually litigated, but of all questions within the issues that could have been properly litigated and decided; yet, when the record only of the former suit is relied on as a bar, it must show with reasonable certainty, and not as mere matter of inference, that the questions in the second suit were litigated and decided in the first; and when this does not appear on the face of the record, parol evidence is admissible in aid of the record.

8. *Same.*—In an action for a breach of contract, to recover one of the monthly installments of wages, a judgment on verdict for the defendant is a bar to a subsequent action for another installment, when it is shown by parol evidence, in aid of the record, that the existence of the contract was the only matter in controversy in that suit; but, when the record alone is relied on, and the issues were broad enough to embrace matters of defense directed only to the particular installment, it is not a bar to such subsequent action.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

These two cases were argued and submitted together. In each case, the action was brought by Jacob Strauss, against S. A. Meertief; was founded on a breach of the same contract; was commenced before a justice of the peace, and was removed into the Circuit Court, by appeal, at the instance of the defendant. The first action was commenced on the 5th July, 1878. The complaint, or statement of the cause of action, filed in the justice's court, alleged that, on the 2d November, 1877, plaintiff entered into a contract with defendant for the services of plaintiff's son, a minor under eighteen years of age, as clerk to defendant, for the period of one year then next ensuing, at the annual salary of $300, payable monthly; that in May, 1878, defendant discharged plaintiff's said son from his employment, without just cause or excuse, and has since persistently refused to employ him; that plaintiff's son " has all the while been ready to do and perform his work and service as clerk as aforesaid, and plaintiff has all the while kept his said son ready to do and perform said service; that by reason of the premises, and the defendant's refusal as aforesaid to allow said service to be performed, as contracted

as aforesaid, between the 2d day of June, 1878, and the 2d day of July following, plaintiff has been damaged in the sum of $100; wherefore plaintiff claims of defendant damages on such of the premises so stated, and in the sum aforesaid." The statement in the other case was in the same words, except a change in the dates, claiming damages for the period "between the 2d day of August, 1878, and the 2d day of September following." On appeal to the Circuit Court, it is stated in the transcript that no other complaint was filed in either case.

In the first case, the defendant pleaded, "in short by consent"—1st, the general issue; 2d, that defendant employed plaintiff's son by the month, discharged him at the end of a month, and paid him in full; 3d, that the discharge was for good cause; 4th, that plaintiff heretofore sued defendant on this identical cause of action, before R. C. Shorter, a justice of the peace, who had jurisdiction, "and was defeated on a trial on the merits," and said judgment is still in force; 5th, that plaintiff was offered other employment for his son, of the same kind and value, after the discharge by the defendant, and refused to allow his son to accept it, "for the express purpose of making this defendant liable for greater damages than he otherwise would have been." In the second case, the defendant pleaded—1st, the general issue; 2d, the offer and refusal of other employment during the term; 3d, "that plaintiff ought not to further have or maintain his said action against him, because he says that plaintiff sued him before one Justice Seawell, for the sum of $25, as the wages due to him for the employment of his son for the month previous to the one for which this suit is brought, and upon the identical contract of employment upon which this suit is brought; that said cause was appealed to this court, and at the last term of this court, since the commencement of this suit, was heard, and determined in favor of the defendant, upon a trial on the merits; that the defendant pleaded in said cause that he did not undertake and promise as the plaintiff charged him to have done, upon which pleas issue was joined; and that witnesses were examined by each party as to said issue, and the matter was submitted to the jury, and the jury found a general verdict for the defendant upon all the issues submitted to them, and judgment was thereon accordingly rendered; which said judgment is in full force and unreversed." Issue was joined on all these pleas in each case.

On the trial in the first case, as the bill of exceptions states, the plaintiff proved the contract of employment as alleged, and the discharge of his son by defendant, on or about the 30th April, or the 1st May; also, that the only reason assigned

by defendant for such discharge was, "that times were dull, and he could not afford to keep plaintiff's son in his employment any longer;" also, that plaintiff protested against the discharge, and kept his son in readiness during the rest of the term, "as he believed he ought to do," to perform the service stipulated, and informed defendant of the fact; and that his son continued out of employment until the 2d September, 1878. The defendant then proposed to prove that, "since the time of his discharge in April, 1878, plaintiff's said son had opportunities of employment, and that said offer of service was declined." The plaintiff objected to this evidence, "on the ground that it was illegal and irrelevant; and on the further ground, that the constant readiness of his son to return to defendant's said service was necessary to plaintiff's reliance on the contract, and precluded his acceptance of any other service from another;" which objections being overruled by the court, plaintiff excepted. A witness for the defendant then testified, "that Munter & Brother and one Brock each offered plaintiff's son, and plaintiff for his said son, service; the latter, for a year, some time in May, 1878, at the rate of $300 per annum; the other, in May, 1878, during a bankrupt sale of the stock of goods of said Munter & Brother, at the rate of $54 per month; and that plaintiff refused these offers of employment for his son, on the ground that he wanted to hold defendant liable for greater damages than he would be liable if employment was accepted, but made no other objection to the service offered." "The defendant offered other witnesses, also, who testified to the habitual neglect of defendant's business by plaintiff's said son—that he was idle and incompetent, and had been all the while since entering defendant's service; and the defendant himself, being sworn, testified to the truth of these statements, but admitted, on cross-examination, that the reason assigned to plaintiff for the dismissal, as above stated, was the hard times, and that therefore he had no further use for his services; and this, he admitted, was the only reason ever assigned to plaintiff. Thereupon, plaintiff moved to exclude all the evidence going to show any different reasons for the discharge of plaintiff's son, than those given and admitted as above stated; insisting that defendant was estopped from setting up any other or different reasons. The court overruled the objections, and plaintiff excepted."

"The foregoing was all the evidence in the cause. Plaintiff then asked the court, in writing, to charge the jury as follows: 1. 'Unless shown by the proofs in the cause that the service, if any, which plaintiff had opportunity to accept, and declined, was of the same nature and kind as that which

plaintiff's said son was to render under the contract with defendant, it can not be considered against plaintiff that he did not accept such service.'    2. 'It is no defense to an action for the services claimed in this case, that the plaintiff, should this appear, had opportunity to accept service for his said son, of like kind, and for like or other compensation, for the time claimed and declared on.'"    The court refused each of these charges, and the plaintiff excepted to their refusal; and he now assigns their refusal as error, together with the rulings of the court on the evidence, to which, as above stated, he reserved exceptions.

On the trial of the second case (in which the defendant below is the appellant), as the bill of exceptions recites, the plaintiff proved the contract, the discharge of his son, his readiness to perform the stipulated service, substantially as in the first case.   "Plaintiff introduced evidence, also, tending to show that the employment which had offered for his son, after his discharge, was of a temporary nature, or was conditional upon the termination of the litigation with the defendant.   Part of defendant's testimony was the evidence of witnesses that plaintiff and his said son, on the trial of the suit before 'Squire Shorter for the wages for the month of May, 1878, had stated under oath that, soon after the discharge of the son by defendant, they had unconditional offers of employment for the son, of like kind as that for which he was engaged by defendant, and that plaintiff had rejected such employment unconditionally, for the purpose of holding defendant for greater damages.   Plaintiff and his said son were put on the stand as witnesses for plaintiff, and evidence was elicited from them by his counsel, tending to show that their statements on said former trial were to this effect—that said offers of employment were conditional, or were of a temporary character; and that they testified to the fact that such offers were for temporary employment, or conditional upon the termination of the suit against the defendant.   The defendant proposed to ask said witnesses, on cross-examination, if they knew, at the time of their examination before 'Squire Shorter, that the fact of having refused employment for the son, after his discharge by defendant, was an important question in the case."   The court sustained an objection to this question, and would not allow it to be asked; to which the defendant excepted.   As to the offer of employment by Brock, the evidence was also conflicting; the defendant's testimony tending to show that it was unconditional, while the plaintiff and his son testified that Brock said he did not want the son until the termination of the suit against defendant.

In this connection, defendant proposed to ask plaintiff and his son, on cross-examination, " What difference did it make to Brock, in employing the son, whether or not the suit was over?" The court sustained an objection to this question, and defendant excepted.

" The defendant introduced evidence, also, tending to show the truth of the matters alleged in his plea of former adjudication, and the pleas filed on the trial in that case ; a copy of which pleas" is annexed to the bill of exceptions as an exhibit, and which are the pleas filed in the first case, as above set out. " The plaintiff introduced evidence showing that, on the 10th June, 1879, plaintiff had taken an appeal to the Supreme Court from the judgment mentioned and referred to in said plea, and that said appeal was taken on the bond or security hereto attached." On this evidence the court charged the jury, *ex mero motu,* " that they must disregard the defense set up in said plea of former adjudication." The defendant excepted to this charge, and requested the following charge, which was in writing : " If the jury find, from the evidence, that a suit between these same parties, on this same contract, for one of the monthly payments falling due before the monthly payment sued for in this case, was tried in the Circuit Court of Montgomery at the last term ; and that on said trial the defendant pleaded and introduced evidence tending to show that he had never made the contract sued on ; and that the case was submitted to the jury on issue taken on that plea, and the jury found a general verdict for the defendant on said trial; and judgment was thereupon rendered for the defendant, and said judgment has not been reversed in the Supreme Court; then they must find for the defendant." The court refused this charge, and the defendant excepted to its refusal.

The court charged the jury, also, on the request in writing of the plaintiff: 1. " If there was a contract between the parties, for the services of plaintiff for a year as clerk for the defendant, and plaintiff was discharged by defendant, without cause, before the expiration of the term of his engagement; then they will consider that plaintiff was not compelled to treat the contract as ended by the act of discharge, and could treat it as continuing for the whole term." 2. "Any employment, refused by plaintiff, must have been under opportunity of employment during the particular period for which plaintiff sues ; and it is upon the defendant to show, to the satisfaction of the jury, that the plaintiff had such opportunity, and that it was for the particular time sued for." To each of these charges the defendant excepted.

The charges given, the refusal of the charges asked, and

[Strauss v. Meertief.]

the several rulings of the court on the evidence to which exceptions were reserved by the defendant, as above stated, are now assigned as error by him.

JOSEPH S. WINTER, for the plaintiff,—When a person is employed for a definite term, and is discharged, without fault, before the expiration of that term, he may treat the contract as thereby terminated, and recover damages for its breach; or he may consider it as still continuing, and recover compensation or wages for each installment as it falls due; and if he elects to pursue the latter course, he must hold himself in readiness to perform the stipulated service at all times, and enter into no other engagement which would prevent or interfere with such performance on his part.—*Ramey v. Holcombe*, 21 Ala. 570; *Costigan v. M. & H. Railroad Co.*, 2 Denio, 609; *Hecksher v. McCrea*, 22 Wendell, 309. This principle, applied to the facts shown by the record in these cases, is decisive of most, if not all of the questions raised, in favor of the plaintiff. If it was necessary that the plaintiff, in order to pursue his remedy on the contract, should hold himself in readiness to perform, any offer or opportunity of other employment during the term was outside of the issues. If such offer or opportunity, and its refusal, would be admissible evidence in any case, it would certainly be incumbent on the defendant, desiring to avail himself of it as a defense, to show also that the offered employment was of the same nature and character as the former, for the same compensation, at the same place, and not objectionable on any other ground; and all these things must be shown, to render the evidence admissible. In this case, if all these prerequisites had been affirmatively shown, the evidence would still have been incompetent; since the contract was for the employment of the plaintiff's minor son, and involved a personal trust, and personal relations, which could not be transferred to another, in excuse of the defaulting defendant. It follows, too, that a judgment in an action for one installment of wages, would not bar an action for another installment, unless it was affirmatively shown that such judgment involved the invalidity of the contract.—4 Otto, 357. The reason assigned for the discharge by the defendant, was a part of the contemporaneous act, and conclusive on the defendant. It was no excuse for the discharge, and justified the plaintiff in treating the contract as still subsisting; and having thus acted on it, the defendant should not be heard to allege any other ground of discharge, of which he gave no notice. As to the questions asked on cross-examination of plaintiff and son, the matters inquired about were irrelevant; the questions were not in proper form,

(20)

being too general; and enough is not shown to enable this court to say that the court below erroneously restricted the limits of a cross-examination.

GUNTER & BLAKEY, *contra*, cited the following cases: 1. As to the offer or opportunity of employment, and its refusal, in reduction of damages: *Murrell v. Whiting & Sumner*, 32 Ala. 54; *Shannon v. Comstock*, 21 Wendell, 457; *Moody v. Leverich*, 14 Abb. Pr. N. S. 145. 2. As to the conclusiveness of the former judgment: *Trustees v. Kellar*, 1 Ala. 406; *Cole v. Conolly*, 16 Ala. 271; *Barron v. Tartt*, 18 Ala. 668; *Lyon v. Odum*, 31 Ala. 234; *Chamberlain v. Gaillard*, 26 Ala. 504; *Wittick v. Traun*, 25 Ala. 317; 9 Porter, 349; *Rakes' Adm'r v. Pope*, 7 Ala. 161. 3. As to the large latitude allowed on the cross-examination of witnesses: *Tanner's Executor v. L. & N. Railroad Co.*, 60 Ala. 643; *Winston v. Cox, Brainard & Co.*, 38 Ala. 274; *Seale v. Chambliss*, 35 Ala. 19; *Stoudenmeier v. Wilson*, 29 Ala. 558; *Pool v. Pool*, 33 Ala. 145; *Bullard v. Lambert*, 40 Ala. 210; 1 Greenl. Ev. § 446.

BRICKELL, C. J.—These causes between the same parties, founded on an averment of separate breaches of the same contract, were argued and submitted together. The case of the plaintiff, as he gave evidence tending to support, and as is alleged in his complaints, is, that on 2d day of November, 1877, the defendant, Meertief, contracted with him for the services as a clerk of his minor son, Isaac Strauss, for a term of twelve months, then commencing, at and for the sum of three hundred dollars, payable in monthly installments of twenty-five dollars. The first case was an action for the recovery of the wages claimed to be due for the month of June, 1878; the second, for the installment of wages claimed to be due for the month of August, 1878. It is averred that, in May, 1878, the defendant, without cause, discharged said Isaac from his service, and refused to permit him to perform said contract.

On the trial of the first cause, the defendant offered evidence tending to show that, after the discharge of said Isaac, he had opportunity of employment, and that such offer of service was declined. To the introduction of this evidence, the plaintiff objected; but his objection was overruled, and the defendant was permitted to prove that, some time in May, 1878, there was an offer made by one Brock, to plaintiff and his son, to employ the son for a year, at the rate of three hundred dollars; and another offer, during a bankrupt's sale, to employ him at the rate of fifty-four dollars per month.

It is not matter of doubt, that when a contract is made for

personal services, for a particular term, at stipulated wages, if the party employed is, without cause, discharged during the term, he has the right to regard the contract as broken, and may immediately sue and recover all the damages resulting from its breach, which he may sustain up to the time of the trial. But he is not compelled to accept the breach of his employer, as a termination of the contract: he may elect to treat it as continuing, and, keeping himself in readiness to perform the contract on his part, may recover the wages due on the expiration of the term.—*Davis v. Ayres*, 9 Ala. 292; *Ramey v. Holcombe*, 21 Ala. 567; *Fowler v. Armour*, 24 Ala. 194. And if the wages are payable by installments, he may sue for and recover each installment, as it becomes due. *Davis v. Preston*, 6 Ala. 83.

2. In this class of cases, the general principle applies, that whoever seeks redress for an injury from the conduct of another, is under a moral and legal duty to use due diligence in preventing loss thereby.—Sedgwick on Dam. 105. It is only direct damages resulting from the breach of the contract which are recoverable. These are a full compensation for the wrong. A party having it in his power, by ordinary care and diligence, to take measures by which the loss will be less aggravated, cannot content himself with inaction. The wrong does not absolve him from all duty to him from whom it may proceed. The logic, justice and equity of the principle are strongly stated and illustrated in *Miller v. Mariner's Church*, 7 Green. 55, by Weston, J.: "If the party injured has it in his power to take measures, by which his loss may be less aggravated, this will be expected of him. Thus, in a contract of assurance, where the assured may be entitled to recover for a total loss, he, or the master employed by him, becomes the agent of the assurer, to save and to turn to the best account such of the property assured as can be preserved. The purchaser of perishable goods at auction fails to complete his contract; what shall be done? Shall the auctioneer leave the goods to perish, and throw the entire loss upon the purchaser? That would be to aggravate it unreasonably and unnecessarily. It is his duty to sell them a second time; and if they bring less, he may recover the difference, with commissions and other expenses of resale, from the first purchaser. If the party entitled to the benefit of a contract, can protect himself from a loss arising from a breach, at a trifling expense, or with reasonable exertions, he fails in social duty if he omits to do so, regardless of the increased amount of damages for which he may intend to hold the other contracting party liable. *Qui non prohibet, cum prohibere possit, jubet.* And he who has it in his power to prevent an injury to his

[Strauss v. Meertief.]

neighbor, and does not exercise it, is often, in a moral, if not
in a legal point of view, accountable for it.   The law will not
permit him to throw a loss, resulting from a damage to him-
self, upon another, arising from causes for which the latter
may be responsible, which the party sustaining the damage
might, by common prudence, have prevented."

In our own own case of *Murrell v. Whiting,* 32 Ala. 66, this
principle—that a party entitled to, and claiming the benefits
of a contract, is bound, if he can with reasonable exertions,
to protect himself from the loss proceeding from its breach—
is fully recognized.   The reason and justice of the principle
must find repeated illustrations in the business of life.   Take
this case.   The son was employed as a clerk, for the term of
one year.   Before the expiration of the term, he is, as alleged,
discharged without cause.   If he had been permitted to con-
tinue the service, he could have earned, and the plaintiff
would have been entitled to, the stipulated wages ; no more,
and no less.   Discharged, the only loss for which, in this ac-
tion founded on the contract, compensation can be claimed,
is the wages which would have been earned.   But the next
day, or at any other intermediate period, like employment, at
the same, or greater wages, by a party as to whom there is
no just exception, is offered him ; or he can obtain it, by the
exertions made ordinarily by men out of employment.   What
damages has he sustained, except the loss of wages when the
act of the defendant left him necessarily unemployed?   He
may not continue unemployed from choice, merely to recover
from the defendant the wages he had contracted to pay.
Neither good morals, nor the law, will countenance him in
persisting voluntarily in idleness, that the amount of his re-
covery from the defendant may not be diminished.   When
compensation was given him, for the time he was necessarily
employed, all the demands of justice are satisfied.—*Shannon
v. Comstock,* 21 Wend. 457 ; *Costigan v. Mohawk & Hudson
R. R. Co.,* 2 Denio, 609 ; *Jones v. Jones,* 2 Swan (Tenn.) 605 ;
*State v. Powell,* 44 Mo. 436.

3. We must not be understood as intimating, that he is
under the duty of engaging in, or accepting, any other em-
ployment than such as may be of the same nature and de-
scription of that in which he was employed by the defendant;
or employment of that kind, at a place different from that in
which the employment of the defendant contemplated his re-
maining during the term.   The father, hiring his minor son
as a clerk to a merchant, may justly be presumed to have in
view the acquirement by the son of knowledge and skill in
that particular business.   This will often be a more material
consideration, than the wages the son can earn during mi-

[Strauss v. Meertief.]

nority. That for the son there was offered, or could with reasonable exertions have been obtained, employment as a laborer on a farm, or as the employee of a railroad company, or a workman in a machine shop, or as an operative in a factory, or in any service not of the same kind, and not affording to the son like advantages for the acquirement of knowledge and skill as a merchant, can not and ought not to furnish a ground for the diminution of the plaintiff's recovery. There is much of personal trust and confidence reposed by a father in engaging his son in the service of another. It must be, if sheer indifference to the welfare of the son is not imputed, a material ingredient of all such contracts. Because of the personal trust, which enters into a contract of apprenticeship, the law holds it is not assignable by the master. *Tucker v. Magee*, 18 Ala. 99. Any reasonable objection, because of capacity, reputation, mode of dealing and transacting business, or of habits or morals, which could be made to the person from whom employment could be obtained, would afford a justification to the plaintiff, for rejecting it when offered, or excuse him from not making exertions to secure it. There can be, only with " a trembling hand," an interference with, or control taken of the discretion of a father, in the determination of that which is the best for his child.

4. If the evidence offered had been, as first proposed, merely that the son had opportunity of service, which he declined, it ought not to have been received. It is the defendant claiming that the plaintiff cannot recover, or that the measure of his recovery shall be reduced, because of facts occurring after a confessed breach of contract. The burden of establishing such facts rests upon him, as of any other fact which is in confession and avoidance. The evidence first offered, to which objection was made, on its face was irrelevant. It was not, so far as disclosed, of a service the father could be held bound to accept. It may be, it was the offer of a service so foreign to that in which the defendant had engaged to employ the son, that from its very nature the father could have refused it. Nor was the offer of employment made to the father, but to the son, who, without the consent of the father, had not capacity to accept or reject it. But, though the proposition may have been of evidence which was irrelevant, yet, if the evidence given was relevant and admissible, the error of the court would be error without injury. The evidence introduced was of an offer of employment which the father rejected, assigning no other reason for the rejection, than that it might interfere with his claim against and right of recovery from the defendant. The evidence was admissible ; and if there was any other reason for

[Strauss v. Meertief.]

not accepting the offer of employment, than that assigned when it was refused, it could have been shown by the plaintiff.

It results from the views we have expressed, that in the first case the Circuit Court erred in refusing the first charge requested by the plaintiff, but that there was no error in refusing the second and third charges; and in the second cause, that the court did not err in giving the charges requested by the plaintiff, to which exceptions were reserved.

5. The cross-examination of a witness is, of necessity, largely under the control, and within the discretion of the primary court; and appellate courts are reluctant to review and reverse their action, in limiting or enlarging its area, when the purpose is to show the bias, or motive, or to impeach the witness. Much must depend on the conduct and attitude of the witness during the examination; and much may depend on the course of the cross-examining counsel. We are disinclined to review and reverse the action of the Circuit Court in its rulings in reference to the questions propounded on cross-examination to the plaintiff, and to his son; as we would be, if the questions had been allowed.—1 Whart. Ev. § 528.

6. There was no necessity that the defendant, at the time of discharging the son from employment, should have assigned any special reason for the dismissal. If such reason then existed, and was known to the defendant, it justified the dismissal, though it may not have been then assigned. The fact that he assigned, as the cause of dismissal, only the want of business, will have more or less tendency to show that there was no other cause for it, and will cast more or less doubt upon the evidence that there was a justifying cause, growing out of the conduct of the son. These are matters for the consideration and determination of the jury; and the assertion by the defendant of a particular cause for it, at the time of the dismissal, does not estop him from showing misconduct on the part of the son, which would justify it.

7. The general principle invoked by the appellant in the second case, in support of the correctness of the charge he requested, and which was refused, cannot be doubted. A judgment, as between parties or privies, as a plea or bar, or as matter of evidence, is conclusive, not only of the questions actually litigated, but of all questions within the issues, which could have been properly litigated and determined.—*Trustees, &c. v. Kellar*, 1 Ala. 406; *Chamberlain v. Gaillard*, 26 Ala. 504; *Wittick v. Traun*, 25 Ala. 317; *Hutchinson v. Dearing*, 20 Ala. 798. But, that a judgment in one action shall be conclusive in another, when only the record is relied on as a

[Strauss v. Meertief.]

bar, it must appear with reasonable certainty, not as mere matter of inference, that the questions in the second suit were litigated and decided in the first suit. If the record does not, on the face of it, bear certain evidence of this fact, it may be aided by parol evidence; and the burden of proof rests on the party holding the affirmative.—*Strother v. Butler*, 17 Ala. 733; *Chamberlain v. Gaillard, supra; Davidson v. Shipman*, 6 Ala. 27. The record of a judgment is not evidence of any matter which was incidentally cognizable in the course of the proceedings leading to its rendition; nor of matter which, from the judgment itself, is to be inferred by argument. *Duchess of Kingston's Case*, 2 Smith's Leading Cases, and notes, 609; *McCravey v. Remson*, 19 Ala. 430.

8. It is doubtless true, that the issues in the first suit, the judgment in which is relied on as a bar, were broad enough to cover the question whether there was a contract made by the defendant for the employment of the son of the plaintiff; and they were broad enough to comprehend various matters of defense directed only to the right of recovery for that particular installment of wages, and which would not affect the right to recover other installments. If, as in the case of *Rakes v. Pope*, 7 Ala. 161, it appeared by parol evidence, in aid of the record, that the existence of the contract was the only matter of controversy in the first suit, the judgment would be conclusive. There is no such evidence; the fact is to be inferred from the general verdict in favor of the defendant, which is good, can be supported, and would, when necessary, be referred to any good plea the defendant may have pleaded. We do not inquire whether the appeal affected the force and effect of the judgment as a bar, or as evidence of a former judgment between the same parties. We hold that, as it did not appear with reasonable certainty that the existence of the contract between plaintiff and defendant was litigated, and the ground of the verdict and judgment in the first suit, the judgment in that suit did not operate as a bar to the second suit.

The result is, the judgment in the first case must be reversed, and the cause remanded; and the judgment in the second case must be affirmed.